UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SHAWN BROOKS,

                Plaintiff,

      -against-

WESTCHESTER COUNTY JAIL, et al.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

19-CV-10901 (PMH)

PHILIP M. HALPERN, United States District Judge:

Shawn Brooks ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, brings this action under 42 U.S.C. § 1983 against Correction Officer Franz Hughes ("Defendant") of the Westchester County Department of Correction ("WCDOC") regarding Defendant's use of force against Plaintiff on October 9, 2019 at the Westchester County Jail ("Jail") in Valhalla, New York.

Plaintiff initiated this action with a Complaint docketed on November 21, 2019. (Doc. 2, "Compl."). That pleading named six Defendants: (1) the Jail; (2) Warden Middleton; (3) Captain Johnson; (4) Sergeant Hollis; (5) United States Probation Officer Veronica Dignam; and Defendant. (Compl. at 1, 3).[1] In a December 4, 2019 Order of Service, Judge Briccetti—before whom this matter proceeded prior to its transfer to this Court on March 17, 2020 (Mar. 17, 2020 Entry)—dismissed Plaintiff's claims against the Jail *sua sponte* and directed the U.S. Marshals to effectuate service on the other five Defendants. (Doc. 6). One day later, on December 5, 2019, Plaintiff filed his Amended Complaint. (Doc. 7, "Am. Compl."). That pleading dropped Dignam as a party but added others. (*See id.* at 1-2). On December 11, 2019, Judge Briccetti dismissed all claims for relief except Plaintiff's single claim against Defendant for excessive force and reasoned that, "[c]onstrued together, plaintiff's complaints may state a valid claim for relief against . . .

---

[1] Citations to Plaintiff's filings correspond to the pagination generated by ECF.

Hughes, whom plaintiff alleges used excessive force against him by punching him in the face."
(Doc. 9 at 1-2).[2] Defendant filed his Answer on February 21, 2020, the parties engaged in
discovery, and discovery closed on November 15, 2020. (*See* Doc. 16; Doc. 24; Doc. 34).

Pending presently before the Court is Defendant's motion for summary judgment under
Federal Rule of Civil Procedure 56 seeking dismissal of the sole claim against him. Defendant
served and filed his motion on February 5, 2021. (*See* Doc. 53; Doc. 53-13, "Def. Br.").[3] The Court
received Plaintiff's opposition brief on May 27, 2021 (Doc. 64, "Opp.), and the motion was
submitted fully with the filing of Defendant's reply brief on July 2, 2021 (Doc. 66, "Reply").

For the reasons set forth below, Defendant's motion is GRANTED.

## BACKGROUND

The facts recited herein are drawn from the Complaint, Defendant's "Proposed Rule 56.1
Statement" (Doc. 53-12, "Def. 56.1 Stmt."), Plaintiff's opposition brief[4] (*see* Opp.), and the
Declaration of Giacomo G. Micciche along with the exhibits annexed thereto (Doc. 53-1,
"Micciche Decl."), which include copies of, *inter alia*: (1) Plaintiff's August 25, 2020 deposition
transcript (Doc. 53-4, "Micciche Decl. Ex. 3"); (2) Defendant's February 5, 2021 Affidavit in
Support of Motion for Summary Judgment (Doc. 53-5, "Micciche Decl. Ex. 4"); (3) surveillance

---

[2] In keeping with this conclusion, the Court interprets the Amended Complaint to supplement, not replace, the Complaint. *See generally Sanderson v. Leg Apparel LLC*, No. 19-CV-08423, 2020 WL 7342742, at *2 n.1 (S.D.N.Y. Dec. 14, 2020); *Perry v. Mary Ann Liebert, Inc.*, No. 17-CV-05600, 2018 WL 2561029, at *4 (S.D.N.Y. June 4, 2018).

[3] As the moving brief lacks page numbers, citations thereto correspond to the pagination generated by ECF.

[4] Plaintiff did not submit his own Rule 56.1 Statement or respond to Defendant's 56.1 Statement. "While *pro se* litigants are . . . not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 Statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wiggins v. Griffin*, No. 18-CV-07559, 2021 WL 706720, at *1 n.1 (S.D.N.Y. Feb. 22, 2021) (internal quotation marks omitted). While Plaintiff's opposition brief does not address Defendant's Rule 56.1 Statement, the Court, in its discretion, will consider the opposition brief as opposition to Defendant's Rule 56.1 Statement.

footage from the Jail showing Defendant's use of force on October 9, 2019 (Doc. 53-7, "Micciche Decl. Ex. 6");[5] (4) various WCDOC records (Doc. 53-8, "Micciche Decl. Ex. 7"); (5) the WCDOC Special Investigation Unit Report (Doc. 53-9, "Micciche Decl. Ex. 8"); and (6) Plaintiff's certified medical records (Doc. 53-11, "Micciche Decl. Ex. 10").

The WCDOC requires that inmates in the Jail be locked into their cells for the evening by 10:00 p.m. (*See* Micciche Decl. Ex. 4 ¶¶ 7-9). As such, around 9:45 p.m. on October 9, 2019, Defendant "was . . . instructing the inmates . . . to enter their cells for 10:00 p.m. lock in." (*Id*. ¶ 8). According to Defendant, he began the process of securing inmates fifteen minutes before the scheduled time to ensure "that the WCDOC schedule is maintained and each inmate is within his cell by 10:00 p.m." (*Id*.). It was during this process that Plaintiff and Defendant met each other for the first time. (Def. 56.1 Stmt. ¶ 19; *see also* Micciche Decl. Ex. 3 at 16, 21-22; Micciche Decl. Ex. 4 ¶ 7). Although it lacks audio, Defendant provided a video of the interaction which lasted approximately two minutes and forty seconds and spawned a federal lawsuit. (Micciche Decl. Ex. 6 at 21:45:54-21:48:36).

At approximately 9:45 p.m. on October 9, 2019, Plaintiff stood outside his cell as Defendant approached him carrying small bags of potato chips in his right hand. (*Id*. at 21:45:54-21:45:57). Defendant checked on cell doors as he approached Plaintiff and, when Defendant reached Plaintiff, he tossed the bags into Plaintiff's cell. (*Id*. at 21:45:57-21:46:06). At that point,

---

[5] Citations to Exhibit 6 correspond to the timestamps of the video and not the placeholder page Defendant filed on the docket. Upon attempting to view the video on the disc provided to it initially, the Court discovered that the video required it to download and utilize a third-party application in violation this District's policies. Consequently, on July 26, 2021, the Court directed Defendant to provide the Court with "a copy of the video that can be viewed with Windows Media Player or the Microsoft Photos application by 5:00 p.m. on July 27, 2021." (Doc. 67). Defendant complied with that Order and delivered a second copy of the video to the Court on July 27, 2021. It is that copy of the video to which the Court cites herein. The first disc also had a second video and a number of still images—the Court did not consider these items, however, because they were not reflected in the Micciche Declaration.

3

Plaintiff and Defendant spoke. (*Id*. at 21:46:06-21:46:13). During this conversation Defendant instructed Plaintiff to lock into his cell for the night. (*See, e.g.*, Micciche Decl. Ex. 3 at 25-26; Micciche Decl. Ex. 4 at ¶¶ 7-9). Plaintiff began to close the cell door, stopped, opened it again, and spoke with Defendant in the doorway for approximately fourteen seconds. (Micciche Decl. Ex. 6 at 21:46:13-21:46:33). Plaintiff then tried to move past Defendant's right-side, but Defendant grabbed Plaintiff's right arm with his left hand and stopped Plaintiff from moving further. (*Id*. at 21:46:33-21:46:37). Defendant then took his left hand off of Plaintiff. (*Id*. at 21:46:37). The two spoke, Defendant tried to place his right hand on Plaintiff's left arm, and Plaintiff swatted Defendant's hand away. (*Id*. at 21:46:37-21:46:38). Defendant responded by grabbing Plaintiff in the chest area with both hands and physically moving Plaintiff back into his cell. (*Id*. at 21:46:38-21:46:46). Once the two were at the entrance of Plaintiff's cell, Plaintiff yanked Defendant inside the cell and outside the camera's view for roughly twenty seconds.[6] (*Id*. at 21:46:46-21:47:04).

Although the two men struggled with each other inside the cell, the exact specifics of what transpired are unclear—most notably, whether Plaintiff punched Defendant with a closed fist during the scuffle. (*Compare* Micciche Decl. Ex. 4 ¶ 13 ("Plaintiff and I entered the cell when Plaintiff abruptly pulled me into the cell . . . . Plaintiff then punched me in the face with a closed fist."), *with* Micciche Decl. Ex. 8 ("I didn't swing no punch or none of that.")). There is no doubt, however, that the two men did hit each other in some way. (*See* Micciche Decl. Ex. 3 at 19 ("When

---

[6] When asked if he pulled Defendant into the cell *or* if Defendant pushed him into the cell, Plaintiff testified that Defendant pushed him in. (Micciche Decl. Ex. 3 at 27). Moreover, WCDOC records indicate that when officials at the Jail asked if he pulled Defendant in, Plaintiff states: "It seemed like I'm pulling him in . . . because I got slippers on. He keeps pushing me back. So when I'm trying to bring, control my step I held on to him and that's when we went in the cell. And he stood up. Now if I pulled him in the cell, I'm pulling him in the cell to fight you for a reason. I'm a going to try to beat you up. I didn't swing no punch or none of that." (Micciche Decl. Ex. 8 at 000010-11 (emphasis removed)). The video belies Plaintiff's account: when Defendant's body is jerked into the cell, Plaintiff's left foot and part of his leg are clearly visible outside the cell door as Defendant goes by him. (Micciche Decl. Ex. 6 at 21:46:47-21:46:49).

I pushed [Defendant], I cut my finger in his face . . . ."); Micciche Decl. Ex. 4 ¶ 13 ("Plaintiff then punched me in the face with a closed fist. In response, I activated my body alarm and punched Plaintiff in the face . . . in an attempt to both defend myself and to subdue Plaintiff's actions."); Micciche Decl. Ex. 8 at 000010 (noting that, in response to Defendant's injuries, Plaintiff stated: "[T]hat's what you get but you busted my lip too."); *id.* at 000011 (Plaintiff admitting that his hand must have made contact with Defendant's face because that was "[t]he only way I could see him get a busted lip")).[7]

Plaintiff, sporting a ripped t-shirt, was the first to leave the cell; Defendant emerged almost immediately thereafter. (Micciche Decl. Ex. 6 at 21:47:04-21:47:08). Plaintiff backed away from Defendant and Defendant pursued him. (*Id.* at 21:47:08-21:47:10). Plaintiff then stopped, braced himself, put his hands out, and shoved Defendant backward into other inmates lined against the hallway wall. (*Id.* at 21:37:10-21:47:12). As Defendant regained his balance and tried to approach Plaintiff once more, Plaintiff again tried to shove Defendant away; this time, however, Defendant grabbed hold of Plaintiff's left arm with his right hand. (*Id.* at 21:47:12-21:47:15).

Notwithstanding Defendant's grip, Plaintiff pushed himself free again and backed away from Defendant as Defendant followed. (*Id.* at 21:47:15-21:47:17). As Defendant caught up with Plaintiff, the latter put his hands on Defendant again and shoved him away. (*Id.* at 21:47:15-21:47:18). After shoving Defendant away this time, Plaintiff continued to back away with his hands up. (*Id.* at 21:47:18-21:47:20). Defendant again tried to get a hold of Plaintiff, but Plaintiff grabbed Defendant's hands and pushed Defendant away; this sequence repeats itself for approximately twenty seconds until Defendant pushed Plaintiff's back against a wall. (*Id.* at

---

[7] Plaintiff cut his right knuckle. (*See* Micciche Decl. Ex. 7 at 000041; Micciche Decl. Ex. 10 at 000023). Plaintiff does not explain—and the Court cannot divine—how Plaintiff could have cut his knuckle on Defendant's face (Micciche Decl. Ex. 3 at 19) if his only action was pushing Defendant away.

21:47:20-21:47:40). The two men struggled against the wall for approximately twelve seconds until Plaintiff removed himself from the wall. (*Id*. at 21:47:40-21:47:52).

The men continued to struggle, their hands interlocked, until Defendant pushed Plaintiff's back against the opposite wall. (*Id*. at 21:47:52-21:47:56). The men remained in this position for approximately ten seconds. (*Id*. at 21:47:56-21:48:06). Plaintiff and Defendant then moved down the hall, hands interlocked with Plaintiff's back against the wall, toward Plaintiff's cell. (*Id*. at 21:48:06-21:48:21). Once at the cell's door, Plaintiff tried to lean away from the cell, but Defendant used his left hand to grab Plaintiff's right arm and push Plaintiff back into the cell. (*Id*. at 21:48:21-21:48:32). Another officer closed the cell. (*Id*. at 21:48:32-21:48:36).

Both men received medical attention following the incident. Records indicate that Plaintiff complained of pain in his face, lip, and the back of his head, and presented with a cut on his middle right finger. (Def. 56.1 Stmt. ¶ 56; *see also* Micciche Decl. Ex. 7 at 000041; Micciche Decl. Ex. 10 at 000023). Plaintiff also complained about aggravating a preexisting injury to his right shoulder. (Def. 56.1 Stmt. ¶ 56; Micciche Decl. Ex. 10 at 000023). As for Defendant, he was diagnosed with facial bruising. (Micciche Decl. Ex. 7 at 000056). This suit followed.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, 442 F. Supp. 3d 714, 722 (S.D.N.Y. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot

preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). The Court's duty, when determining whether summary judgment is appropriate, "is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Id.* (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence; the task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial . . . ." *Bellotto v. Cty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)). Claims simply cannot proceed in the absence of sufficient proof as to an essential element.

"It is the movant's burden to show that no genuine factual dispute exists," *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), and a court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 442 F. Supp. 3d at 722 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts . . . ." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, "[i]f there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must establish also its "entitlement to judgment as a matter of law." *In re Davis New York Venture Fund Fee Litig.*, 805 F. App'x 79, 80 (2d Cir. 2020) (quoting *FIH, LLC v. Found. Capital Partners LLC*, 920 F.3d 134, 140 (2d Cir. 2019)). Stated simply, the movant must establish that the law favors the judgment sought. *Gonzalez v. Rutherford Corp.*, 881 F. Supp. 829, 834 (E.D.N.Y. 1995) (explaining "that summary judgment is appropriate only when . . . law supports the moving party"); *Linares v. City of White Plains*, 773 F. Supp. 559, 560 (S.D.N.Y. 1991) (explaining that summary judgment is appropriate when "the law so favors the moving party that entry of judgment in favor of the movant . . . is proper").

The Court is, of course, mindful that "[*p*]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018) (internal quotation marks omitted). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment" (internal quotation marks omitted)); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017).

8

## ANALYSIS

I. Relief Under 42 U.S.C. § 1983

As mentioned previously, Plaintiff's federal claim proceeds under 42 U.S.C. § 1983. That law provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42 U.S.C. § 1983. "[T]his language does not create substantive rights; rather, it creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021). Plaintiff alleged here that Defendant violated his constitutional rights, but Defendant insists that summary judgment is proper at this juncture because there are no genuine issues of material fact and, quite simply, Plaintiff has no viable claim.

A. Applicability of the Eighth or Fourteenth Amendment

Before turning to the substantive analysis, both Plaintiff and Defendant proceed under the belief that Plaintiff's claim for excessive force is analyzed under the Eighth Amendment. (*See* Compl. at 4; Def. Br. at 8-16; Reply at 4-6). The Court disagrees.

Plaintiff was, at the time of the incident, detained for allegedly violating the terms of a sentence imposed in an unspecified federal prosecution.[8] (Def. 56.1 Stmt. ¶ 2 (noting that Plaintiff was incarcerated at the Jail "awaiting transfer to federal custody"); Compl. at 2 (alleging that

---

[8] Based upon the Court's own search of dockets in the United States District Court for the Southern District of New York, it appears that Plaintiff is the defendant in two criminal actions—both of which suggest a connection to the reason for Plaintiff's stint at the Jail: (1) *United States v. Brooks*, No. 09-CR-01022-41, Doc. 1059 (Judgment, signed by Judge Karas on March 16, 2020, indicating that defendant admitted to violating terms of supervised release); and (2) *United States v. Brooks*, No. 16-CR-00053, Doc. 32 (same). The Court may take judicial notice of court filings. *See Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *1 n.2 (S.D.N.Y. June 30, 2021) (citing *Marom v. Town of Greenburgh*, No. 20-CV-03486, 2021 WL 797648, at *2 n.5 (S.D.N.Y. Mar. 2, 2021)).

Plaintiff's prisoner status was "Probation Violation U.S."); Am. Compl. at 4; Micciche Decl. Ex. 3 at 10-12). Given that posture and the fact that, on October 9, 2019, Plaintiff had not yet been adjudicated guilty for violating the terms of his underlying sentence(s), the Court is persuaded that during this interaction Plaintiff resembled more closely a pretrial detainee than a convicted prisoner. *See Kravitz v. Cty. of Columbia*, No. 16-CV-01251, 2019 WL 4395462, at *5 (N.D.N.Y. May 15, 2019) (concluding that the Fourteenth Amendment applied to the plaintiff's deliberate indifference claim because "it is undisputed that plaintiff was incarcerated for a parole violation, and it is unclear at what time during the period of plaintiff's incarceration he had his revocation hearing"), *adopted sub nom. Kravitz v. Lanphear*, 2019 WL 3315158 (N.D.N.Y. July 24, 2019); *Reinoso-Delacruz v. Ruggerio*, No. 19-CV-00149, 2019 WL 2062434, at *3 (D. Conn. May 9, 2019) (reasoning that because the plaintiff had not been "found guilty of violating his probation" until after the incident, his failure to protect claim was analyzed under the Fourteenth Amendment); *Hill v. Cty. of Montgomery*, No. 14-CV-00933, 2018 WL 2417839, at *2 (N.D.N.Y. May 29, 2018) (concluding that "even if [the plaintiff's] probation had not expired prior to the alleged violation, because he had not yet had a hearing or been found guilty of the violation, his status is more akin to that of a pretrial detainee").

Based upon the foregoing, the Court concludes that the Fourteenth, not the Eighth, Amendment governs Plaintiff's claim for excessive force against Defendant in this case.

B.  Defendant's Use of Force Did Not Violate the Fourteenth Amendment

"The Fourteenth Amendment's 'Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.'" *Gerard v. City of New York*, 843 F. App'x 380, 382 (2d Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)); *see also Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (explaining that pretrial detainees "may not be

10

punished in any manner—neither cruelly and unusually nor otherwise" (internal quotation marks omitted)). Establishing excessive force under this standard requires that Plaintiff "show only that the force purposely or knowingly used against him was objectively unreasonable." *Correa v. Lynch*, No. 20-CV-02875, 2021 WL 2036697, at *7 (S.D.N.Y. May 20, 2021) (quoting *Kingsley*, 576 U.S. at 396-97); *Jones v. Reinbolt*, No. 19-CV-06672, 2020 WL 9460508, at *4 (W.D.N.Y. June 1, 2020) (explaining that this claim requires a plaintiff to establish that the force used was "deliberate" and that it was "objectively unreasonable" (internal quotation marks omitted)). Here, "the relevant standard is objective" and requires Plaintiff to establish that "the force was not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose." *France v. Morton*, No. 12-CV-05576, 2018 WL 1276860, at *9 (S.D.N.Y. Mar. 9, 2018) (internal quotation marks omitted).

There is no question that Defendant used force purposefully. The sole issue, then, is whether the force used was objectively reasonable. In order to answer that question, "[a] court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Kingsley*, 576 U.S. at 397. When performing this analysis, the Court:

> should account for such factors as the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. The factfinder must also take account of the legitimate interests in managing a jail, acknowledging as part of the objective reasonableness analysis that deference to policies and practices needed to maintain order and institutional security is appropriate.

*Frost v. New York City Police Dep't*, 980 F.3d 231, 252 (2d Cir. 2020) (internal citations and quotation marks omitted). The factors listed above guide the Court's analysis, but they are by no

means an exhaustive list of proper considerations. *See Kingsley*, 576 U.S. at 397 (explaining that these factors "illustrate the types of objective circumstances potentially relevant to a determination of excessive force"); *Knight v. City of New York*, No. 16-CV-07888, 2019 WL 95480, at *3 (S.D.N.Y. Jan. 2, 2019) (describing the factors as "[a] non-exclusive list of the considerations that may bear on the reasonableness of the use of force").

On the undisputed facts here, the force Defendant used against Plaintiff on October 9, 2019 was objectively reasonable and no reasonable juror could conclude otherwise. Consideration of the six factors, and the totality of the circumstances, bear this conclusion out.

First, the force used was limited. Defendant tried to compel Plaintiff's compliance with the order to lock into his cell and Plaintiff refused, shoving Defendant away. (*See generally* Micciche Decl. Ex. 6 at 21:45:54-21:48:36). Second, Plaintiff complained of pain to his head, face, lip, and shoulder, afterward—but the record establishes that Plaintiff displayed nothing more than the *de minimis* injury of a cut to his right knuckle. (Def. 56.1 Stmt. ¶ 56; *see also* Micciche Decl. Ex. 7 at 000041; Micciche Decl. Ex. 10 at 000023). Third, Defendant applied a measured response; he used force to compel Plaintiff's cooperation only after Plaintiff used force. (*See* Micciche Decl. Ex. 6 at 21:45:54-21:48:36). Fourth, Defendant sought to enforce WCDOC policy and his order; Plaintiff has offered no conceivably legitimate reason for his aggressive noncompliance. (Micciche Decl. Ex. 4 ¶¶ 8-9, 14; *see generally* Opp.). Fifth, any reasonable officer—and certainly Defendant—would perceive Plaintiff as a threat. (*Compare* Micciche Decl. Ex. 3 at 28 ("I'm 295 pounds. If I wanted to . . . manhandle him . . . I could've did it . . . ."), *with* Micciche Decl. Ex. 4 ¶ 12 ("I am 5'11" tall and weigh approximately 170 lbs. Plaintiff . . . is approximately 5'11" tall and weighed approximately 270 lbs. on October 9, 2019 . . . .")). Finally, Plaintiff resisted Defendant and escalated the situation. (*See e.g.*, Micciche Decl. Ex. 6 at 21:45:54-21:48:36).

Given consideration of these factors and the totality of the circumstances presented through the evidence, "although perhaps the struggle . . . could have been gentler, the video footage does not suggest that the officers' actions could reasonably be viewed as excessive." *Frost*, 980 F.3d at 256; *see Jenkins v. Medert*, No. 16-CV-01491, 2018 WL 5728050, at *4 (N.D.N.Y. July 2, 2018) (observing that "[i]nherent in a corrections officer's job duties is maintaining control over inmates in his custody"), *adopted by* 2018 WL 4328823 (N.D.N.Y. Sept. 11, 2018); *Maxwell v. Miller*, No. 16-CV-00275, 2018 WL 3095834, at *5-7 (N.D.N.Y. May 21, 2018) (finding that the record substantiated only "two flesh-deep scratches" and that "[s]uch injuries, on their own, are *de minimis*"), *adopted by* 2018 WL 3069210 (N.D.N.Y. June 21, 2018); *Boomer v. Lanigan*, No. 00-CV-05540, 2002 WL 31413804, at *2 (S.D.N.Y. Oct. 25, 2002) (granting summary judgment on pretrial detainee's excessive force claim where, *inter alia*, "[t]he tape shows that a scuffle ensued . . . which consisted essentially of the Team leaning into Boomer to hold him against the wall until he settled down"); *see also Perry v. Stephens*, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) ("While Plaintiff also alleges that Defendant choked him, it is undisputed that Plaintiff first attempted to kick Defendant. Considering the circumstances in which the alleged use of force occurred and the need to restore discipline, it cannot be said that Defendant's actions rise beyond the level of *de minimis* use of force."); *Harris v. Ashlaw*, No. 07-CV-00358, 2007 WL 4324106, at *7 (N.D.N.Y. Dec. 5, 2007) ("While plaintiff may have believed that his defiance of defendants' direct order was justified, it does not shield him from the consequences associated with his refusal to comply.").

However, more pointedly, the simple fact is that this case—filed in a United States District Court—is about two grown men, one a correction officer and the other a pretrial detainee, hitting and shoving each other over a three-minute period; a scuffle. The resulting bruises, *de minimis* and inconsequential as they are, are not indicative of excessive force by any stretch of the imagination.

Absolutely nothing about this fact pattern rises to the dignity of a violation of the Fourteenth Amendment to the Constitution of the United States.

This case is dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 53, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.[9]

**SO ORDERED:**

Dated:    White Plains, New York
          August 2, 2021

_____
PHILIP M. HALPERN
United States District Judge

---

[9] Given the conclusions reached herein, the Court need not and does not reach Defendant's alternate argument regarding the availability of emotional damages under the Prison Litigation Reform Act. (*See* Def. Br. at 17-18).